UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MATTHEW RIZZUTO,

        Plaintiff,     **MEMORANDUM AND ORDER**

   -against-         17-CV-7381 (ILG) (ST)

BILL DE BLASIO, et al.,

        Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

   In this action seeking damages for Defendants' allegedly unlawful actions in connection with his placement in foster care, Plaintiff Matthew Rizzuto seeks to be represented by his father, Donald N. Rizzuto, Esq. ("Mr. Rizzuto" or "Plaintiff's father"). Defendants, including several entities that oversaw Plaintiff's foster care placement as well as Plaintiff's maternal grandparents, move to disqualify Plaintiff's father from serving as his counsel, arguing that he is required to serve as a witness on his son's behalf and that his representation is impaired by conflicting interests with his son.

   For the reasons discussed below, the Court GRANTS Defendants' Motion to Disqualify Plaintiff's father from serving as his attorney.

<strong>BACKGROUND</strong>

   Plaintiff and his younger brother ("Plaintiff's brother") were placed in foster care from November of 2001 to August of 2010. Compl. ¶¶ 32-35, 76. Plaintiff, now an adult, was between the ages of three (3) and eleven (11) during that time. Compl. ¶ 1. Defendant New York City Administration for Children's Services ("ACS") removed Plaintiff's brother from his parents'

- 1 -

home after he was admitted to the hospital with a head injury. Compl. ¶¶ 21-35. Plaintiff was also removed on the basis that he had been derivatively neglected by his parents. Compl. ¶¶ 31-35.

In a decision dated November 24, 2003, the New York State Family Court in Queens, New York dismissed the abuse petition against Plaintiff's parents. Compl. ¶ 40; *see also Matter of Peter R.*, 779 N.Y.S.2d 137, 138 (App. Div. 2004). The City of New York appealed this ruling to the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department. On June 21, 2004, the Appellate Division reversed the Family Court and entered a finding that Plaintiff's parents had abused and/or neglected Plaintiff's brother and had derivatively neglected Plaintiff. *Matter of Peter R.*, 779 N.Y.S.2d at 140.

From 2002 to 2010, Plaintiff and his brother remained in the foster care of their maternal grandparents, with whom, the Complaint suggests, Plaintiff's father has an intensely negative relationship. Compl. ¶¶ 54-69. Plaintiff's parents were both permitted supervised visitation of their children, although Mr. Rizzuto's visitation rights were restricted beginning in 2005 based on what Plaintiff refers to as a "heated verbal exchange" between Mr. Rizzuto and Plaintiff's maternal grandfather. Compl. ¶ 54. Subsequently, after it was found that both Mr. and Ms. Rizzuto had visited with the children unsupervised, in violation of the conditions set by the Family Court, all visitation was restricted for both parents for roughly two years between 2006 and 2008. Compl. ¶¶ 64-65. Additionally, Defendants provide, as exhibits to the Motion to Disqualify, documents from the Family Court proceedings indicating that ACS's predominant stated reason for recommending that Plaintiff remain in foster care was Mr. Rizzuto's "inappropriate and psychologically scarring verbal interaction with the children." Mot. to Disqualify at 5.

Plaintiff and his brother were ultimately returned to the custody of their parents in August of 2010. Compl. ¶ 76.

Plaintiff asserts fourteen causes of action challenging his extended placement in foster care, the restrictions placed on his parents' visitation, and the conduct of Defendants in the various state court proceedings. Compl. ¶¶ 77-179. These causes of action include infringement of Plaintiff's Constitutional rights to family integrity, social work malpractice, legal malpractice, false arrest and imprisonment, intentional infliction of emotional distress, conspiracy, and several other tort claims arising under New York common law. *Id.*

The substance of all of these claims is that Defendants placed Plaintiff in foster care and restricted his parents' visitation rights arbitrarily—without any genuine evidence that his parents were unfit to take care of him—and in bad faith—with no intentions of working to return Plaintiff to his parents' custody. The Plaintiff frequently refers to Defendants—who include the City of New York, ACS, the Legal Aid Society, SCO Family of Services, and Plaintiff's maternal grandparents—as planning in concert to circumvent Plaintiff's rights, which he suggests was in large measure because of Defendants' personal antipathy towards his father Mr. Rizzuto. Compl. ¶¶ 45-47, 56-57, 62, 65, 68-70, 74, 89, 91, 95, 97, 109-111, 113-114, 122, 130, 163-165, 171, 176-178.

## DISCUSSION

### I.      Standards for Disqualification of Attorneys

Disqualification of an attorney is committed to the discretion of the district court. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994). The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the judicial system and the adversary process. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 431 (N.D.N.Y. 2012); *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (emphasizing the Court's responsibility

"to maintain the highest standards of the profession") (internal quotation marks and citation omitted).

A party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing that disqualification is warranted. *Matter of Kopet*, 81 N.Y.S.3d 538, 540–41 (App. Div. 2018) (collecting cases). Disqualification motions therefore place a heavy burden on the moving party to demonstrate that disqualification is appropriate. *See Evans v. Artek Systems Corp.,* 715 F.2d 788 (2d Cir. 1983). The high standard required of the party seeking disqualification is also necessary because disqualification motions "'are often interposed for tactical reasons,' and . . . 'even when made in the best of faith . . . inevitably cause delay.'" *Mercedes v. Blue*, No. 00-CV-9225 (RMB) (MHD), 2001 WL 527477, at *1 (S.D.N.Y. May 17, 2001) (citing *Evans,* 715 F.2d at 791-92). Nonetheless, because of the key role played by attorneys in ensuring the integrity of the adversary process, "[w]hen a party moves for the disqualification of his adversary's attorney, any doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *accord Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004).

To determine when an attorney should be disqualified, this Court looks to the binding precedent of the Second Circuit, with rules of professional conduct serving as a guide. *See Hempstead*, 409 F.3d at 132 ("Although our decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules, such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily

lead to disqualification.") (internal quotation marks and citations omitted).[1] "Conversely, disqualification may be justified even in the absence of a clear ethical breach where necessary to preserve the integrity of the adversary process." *First NBC Bank v. Murex, LLC*, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).

Defendants assert two grounds for the disqualification of Mr. Rizzuto: the "advocate-witness" rule and conflicts of interest with his son. The Court finds that both of these grounds warrant disqualification of Plaintiff's father from serving as his attorney. The Court will discuss each ground in turn below.

## II.    The Advocate-Witness Rule

The advocate-witness rule prohibits an attorney from representing a party in a case where the attorney will or "ought to" be called as a witness. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). Under the rule, an attorney may be disqualified from representing a client in an action when such attorney has knowledge of the facts or has participated in some of the events giving rise to the lawsuit and who, if allowed to participate in the case as both an advocate and a witness, would jeopardize the court's interest in ensuring that the litigation is conducted fairly and in conformity with prevailing ethical rules. *See Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018), *reconsideration denied*, 319 F. Supp. 3d 741 (S.D.N.Y. 2018); *see also Murray*, 583 F.3d at 178 (noting that disqualification under the advocate-witness rule is intended to prevent "harm to the integrity of the judicial system"). Disqualification in such circumstances prevents

---

[1] On April 1, 2009, the New York Rules of Professional Conduct became effective, superseding the Canons of the New York Code of Professional Responsibility. *See Sea Trade Mar. Corp. v. Coutsodontis*, No. 09-CV-488 (BSJ) (HBP), 2011 WL 3251500, at *7 n.4 (S.D.N.Y. July 25, 2011). Nevertheless, "the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules." *Id.* (internal quotation marks and citation omitted).

parties from being forced to "choose between the attorney's testimony and his representation." *MacArthur v. Bank of New York,* 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981). "When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony." *United States v. Kliti*, 156 F.3d 150, 156 (2d Cir. 1998); *see also* NY Eth. Op. 1045 (January 8, 2015) ("If the lawyer is likely to be a witness on a significant issue of fact, Rule 3.7(a) does not authorize the lawyer to choose whether to be a lawyer or a witness. The lawyer must not act as an advocate before the tribunal.").

In this Circuit, motions to disqualify counsel under the advocate-witness rule are assessed differently depending on whether the attorney (a) "ought to" testify on behalf of *his own* client or (b) may be called as a witness *by another party*. *Lamborn*, 873 F.2d at 531. This distinction corresponds to a previous version of the New York Disciplinary Rules that provided:

> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness *on behalf of his client*, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial . . . .

> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns that or it is obvious that he or a lawyer in his firm may be called as a witness *other than on behalf of his client*, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

*Id.* (citing former D.R. 5-102) (emphasis added). "The test under subdivision (A) is whether the attorney's testimony could be *significantly useful* to his client. If so, he should be disqualified regardless of whether he will actually be called." *Id.* (internal citation omitted) (emphasis added); *accord Lipin v. Bergquist*, 574 F. Supp. 2d 423, 427 (S.D.N.Y. 2008); *Hecklerco, LLC v. Yuuzoo Corp. Ltd.*, No. 15-CV-5779 (VM) (DF), 2016 WL 7742783, at *4 (S.D.N.Y. Dec. 16, 2016); *see also Yankelevitz v. Cornell Univ.*, No. 95-CV-4593 (PKL), 1996 WL 447749, at *2 (S.D.N.Y. Aug. 7, 1996) ("Strong policies underlie DR 5–102(A) that operate [] to protect the interests of the

- 6 -

[client], the interests of the adverse party, and the reputation of the legal profession as a whole.") (internal quotation marks and citation omitted).

Courts in this Circuit have sometimes described the test for whether an attorney "ought to" be called as a witness on behalf of his client as whether his testimony is "necessary." *See, e.g.*, *The Cadle Co. v. Demadeo*, 256 F. Supp. 2d 155, 157 (E.D.N.Y. 2003). Determining whether an attorney's testimony is "necessary" requires the court to consider (1) the significance of the subject of the testimony to the case; (2) the availability of other evidence; and (3) the weight of the attorney's testimony. [2] *Id.*

---

[2] To this Court's knowledge, the rule announced in *Lamborn*, 873 F.2d at 531, holding that an attorney should be disqualified when his testimony would be "significantly useful" *to his own client's case* has never been overturned. District courts in later cases, seemingly overlooking the distinction between which party should or is likely to call the attorney as a witness, have discussed only whether the attorney's testimony is "necessary." *See Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 232-34 (S.D.N.Y. 2010); *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010). Other cases have continued to use the "significantly useful" test. *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 663 (S.D.N.Y. 2001); *Lipin v. Bergquist*, 574 F. Supp. 2d 423, 427 (S.D.N.Y. 2008). This divergence may be informed in part by New York's 2009 revision of its Rules of Professional Conduct, as the current version of the advocate-witness rule (Rule 3.7) does not distinguish between which side calls the lawyer as a witness. *But see Int'l Elec. Corp. v. Flanzer*, 527 F.2d 1288, 1293 (2d Cir. 1975) (noting that the federal courts decide motions to disqualify on the basis of precedent and individualized discretion, with codes of professional conduct serving only as guides); *accord Sea Trade Mar. Corp.*, 2011 WL 3251500, at \*7 n.4.

In some cases, the question of whether the attorney's testimony is merely "significantly useful" or in fact "necessary" may prove dispositive, as courts have suggested that an attorney's "[t]estimony may be relevant and *even highly useful* but still not strictly necessary." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 423 (S.D.N.Y. 2015) (citing *S & S Hotel Ventures*, 69 N.Y.2d at 446, 515 N.Y.S.2d 735, 508 N.E.2d 647 (1987)) (emphasis added).

In the case at hand, however, as discussed below, the Court finds that Mr. Rizzuto's testimony is so integral to the case that he should be disqualified even under the stricter "necessary" standard, as well as under the "significantly useful" standard set forth in *Lamborn*. The Court need not address the question of which standard properly controls as a general matter.

*Necessary Witness*

Mr. Rizzuto is not only a necessary witness but *the* key witness for his son's claims. He must be disqualified from continuing to represent his son in this action.

As noted, Plaintiff's claims in this action relate to his placement in foster care between the years 2001 and 2010. Plaintiff was between the ages of three (3) and eleven (11) during this period. In an unsworn declaration submitted as an exhibit to his Opposition to the Motion to Dismiss, Plaintiff states, "I have neither independent recollection of the events that brought upon the action nor any knowledge of any events or proceedings in the Family Court which commenced nearly seventeen (17) years ago." Declaration of Matthew Rizzuto ¶ 4 ("Matthew Decl."), ECF No. 50.   Plaintiff makes clear that he is relying on his "parents' personal knowledge of the Family Court proceedings." Matthew Decl. ¶ 6. Plaintiff notes in particular his father's "intimate knowledge of Family Court proceedings" based on his involvement in his own custody case over a nine year period as a reason that his father "would be the only one to effectively represent [him] in all phases of this action." Matthew Decl. ¶¶ 9-10.

Plaintiff's reliance on his father as an unparalleled and indispensable source of information about this case is strongly supported by the allegations in the Complaint. It is clear that Plaintiff's father was a key participant in all of the events that led to Defendants' allegedly unlawful efforts to separate Plaintiff from his parents. Plaintiff's father took Plaintiff's brother to the hospital to treat the head injury that formed the basis of both children's removal from their parents' home. Compl. ¶¶ 20-22. Plaintiff's father was interviewed by the New York City Police Department during its investigation of Plaintiff's parents for child abuse. Compl. ¶ 27. Plaintiff's father was a party to all of the state court proceedings relating to Plaintiff's foster care placement, including those in which it was found

that he had violated the terms of visitation with Plaintiff and the protective orders entered against him. Compl. ¶¶ 36-76.

As such, it is not plausible that Plaintiff's case can be presented without the testimony of Plaintiff's father, Mr. Rizzuto.[3] Plaintiff's father is a necessary witness for his son.

Plaintiff appears not to contest either that his father's testimony (1) concerns matters that are of central significance to the case or (2) would be afforded great weight, which are two of the three factors the Court considers when determining whether a witness is "necessary," *The Cadle Co.*, 256 F. Supp. 2d at 157. *See* Plaintiff's Memorandum in Opposition to Motion to Disqualify 16-17, 25-27 ("Opp'n"), ECF No. 49-2. Mr. Rizzuto advocated for Plaintiff's return home throughout the entirety of his nine years in foster care and had numerous disputes with the Defendants who advocated against his wishes. As such, Mr. Rizzuto could undoubtedly provide testimony about critical facts in this case. His testimony would also be given great weight by the fact-finder because of his deep, first-hand knowledge of the facts.

Plaintiff does, however, contend that Mr. Rizzuto should not be deemed a "necessary" witness because of the availability of other evidence to establish the facts set forth in his

---

[3] Acknowledging our Circuit's general concern that motions to disqualify the opposing party's attorney may be interposed for tactical reasons, *see Evans*, 715 F.2d at 791–92, the Court does not perceive that Defendants' motion is tactical in nature. Defendants voiced their intention to move to disqualify Mr. Rizzuto shortly after they were served with the complaint. *See* Motion for Pre-Motion Conference, ECF No. 27. They have submitted the motion at the outset of the case, before discovery has begun. *Cf. Murray*, 583 F.3d at 180 (where plaintiff waited until five weeks before trial, the "lengthy and unexcused delay in bringing its motion to disqualify" suggested tactical motive); *Acker v. Wilger*, No. 12-CV-3620 (JMF), 2013 WL 1285435, at *2 (S.D.N.Y. March 29, 2013) (tactical motive suggested where party waited to raise advocate-witness concerns for almost eleven months, after discovery had closed and a schedule for summary judgment and trial had been set).

complaint. Opp'n 25. Specifically, Plaintiff argues that he can present his case through the testimony of his mother, agents of the Defendants, "therapists, case workers or [other] attorneys," and through documentation associated with the Family Court proceedings concerning his foster care placement. *Id.* This other evidence, Plaintiff argues, would be an effective substitute for Mr. Rizzuto's testimony, rendering it essentially cumulative and therefore unnecessary. Opp'n 17, 25; *see, e.g.*, *MacArthur*, 524 F. Supp. at 1208 ("An additional corroborative witness would almost always be of some use to a party, but might nevertheless be essentially cumulative. At some point, the utility of additional corroboration is de minim[i]s and does not require the attorney's disqualification.").

The Court is not persuaded that Plaintiff's father's testimony would be rendered unnecessary by this other evidence, even assuming its availability and admissibility. Mr. Rizzuto was centrally involved in all of the disputed matters of the complaint. Mr. Rizzuto was a direct adversary of Defendants in the myriad legal proceedings arising out of Plaintiff's foster care placement. Plaintiff disputes the legitimacy of this placement and the true intentions of Defendants in advocating against his father, but Plaintiff nonetheless acknowledges that the Defendants cited *his father's own conduct* as the principal reason for their opposition to his earlier return or unrestricted visitation by his parents. Opp'n 8. As noted in his complaint, Plaintiff's father's visitation rights were restricted in 2005 because of a "heated verbal exchange" between his father and his maternal grandfather over his foster care placement. Compl. ¶ 58. Plaintiff challenges the validity of this alleged abridgement of his and his father's rights to family integrity through a number of claims. To recover on these claims, Plaintiff's father will have to explain why his conduct in this "heated verbal exchange" did not justify Defendants' actions. The same holds true for the episode referenced in Defendants' Motion to Disqualify, during which Mr. Rizzuto

allegedly told a case worker that he led Plaintiff to believe that *he* was responsible for his brother's injury, and thus responsible for the placement of both children in foster care. Mot. to Disqualify 5. *See Decker*, 716 F. Supp. 2d at 234 (finding that attorney in malpractice case was necessary witness because he "was one of only three attorneys" representing plaintiffs and "will need to explain why he did not take steps to minimize plaintiffs' alleged harm"). In short, there is no way that Plaintiff can put on his case without the testimony of his father.

The application of the necessity standard in previous cases by courts in this Circuit supports a finding that Plaintiff's father is a necessary witness. Our cases make clear that though the test for necessity is strict, it is met when the attorney is a or *the* central participant in the events that form the basis of the complaint. *See Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 791 (S.D.N.Y. 2015) ("Defendants have demonstrated that [Plaintiff's attorney] is a key witness on factual issues of great significance to the litigation . . . . [He] may be in the best, or only, position to testify about aspects of the footage and photo licensing agreements, given his direct involvement therein."); *Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996) ("The Court . . . concludes that Mr. Mathison's extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit require his disqualification, both because of the likelihood that he will be a necessary witness and because of the real and present danger that his personal interests will infringe on his professional representation in ways deleterious to his client."); *Fulfree v. Manchester*, 945 F. Supp. 768, 772 (S.D.N.Y. 1996) ("These are *core* issues as to which Mr. Fulfree may have to testify. Clearly, Mr. Fulfree's success or lack thereof as a witness may affect his success as a lawyer and vice versa. Moreover, Mr. Fulfree cannot fulfill his role as counselor, giving neutral and dispassionate advice (from a professional standpoint), when he is also a husband who has a stake in the outcome of the litigation.") (emphasis in original); *Decker*, 716 F. Supp. 2d

at 234. In the case at bar, Mr. Rizzuto is *the* central witness on behalf of his son, and his testimony is obviously required on issues that are central to the case. The Court has no hesitation in finding that he is a necessary witness and should be disqualified. *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 213 (S.D.N.Y. 2009) ("[T]he Second Circuit has not hesitated to disqualify counsel 'when the circumstances warranted it.'") (citing *Evans,* 715 F.2d at 791).

### *Prejudice*

In addition to asserting that his father's testimony would be rendered cumulative, Plaintiff claims that "[m]ovants' application also founders on the 'prejudice' prong of the disqualification inquiry." Opp'n 18. As noted, *supra*, no showing that Plaintiff's father's testimony would be prejudicial to his son's claims is required, because Plaintiff's father is a necessary witness on his son's behalf, not a witness that merely may be called by Defendants. *See Lamborn*, 873 F.2d at 531; *see also Skiff-Murray v. Murray*, 771 N.Y.S.2d 230, 233 (App. Div. 2004) ("As to plaintiff's contention that Wardlaw's testimony would not be contrary to the client's interests, we note that the potential prejudicial impact of an attorney's testimony is not pertinent where, as here, the testimony is necessary to establish the client's claim."). The Court therefore will not undertake this inapplicable analysis.

### *Substantial Hardship*

Plaintiff claims that the Court should not disqualify his father from serving as counsel because doing so would cause him "substantial hardship." Opp'n 22-24. In the Second Circuit, an attorney may continue to represent a client even when he is required to serve as a witness in the case when "disqualification of the lawyer would work a substantial hardship on the client." *Ramchair v. Conway*, 601 F.3d 66, 75 (2d Cir. 2010).

Plaintiff suggests two reasons that his father's disqualification would cause him substantial hardship. The first is that his father has "intimate knowledge of the Family Court proceedings" and other underlying facts of the case by virtue of his nine years of participation in them. Opp'n 22. He suggests that a new attorney's lack of knowledge of these facts would render the attorney unable to effectively litigate the case. *Id*.

This argument is meritless. If Plaintiff's father were disqualified from serving as his son's attorney, this would not prevent him from explaining the facts of the case to a newly retained attorney. Given that Mr. Rizzuto is the key fact witness in the case, and that Plaintiff himself was between the ages of three (3) and eleven (11) when the events at issue occurred, the Court would fully expect Mr. Rizzuto to provide factual background to a newly retained attorney.[4]

Second, Plaintiff suggests that, although he and his father have searched, they have been unable to find another attorney with experience in "42 U.S.C. § 1983 cases involving the Family Court." Opp'n 22; Matthew Decl. ¶ 8.

This claim is simply not credible. Suits challenging Family Court proceedings in the federal courts, including under 42 U.S.C. § 1983, are frequent. This Court currently has such cases before it, and the plaintiffs in these cases are ably represented. As such, both of Plaintiff's arguments that his father should not be disqualified because of the substantial hardship it would cause him are meritless.

---

[4] In addition to failing to provide evidence of substantial hardship to Plaintiff that would result from his father's disqualification, this argument further highlights the need for Plaintiff's father to act as a witness, as opposed to an advocate, by referencing his unparalleled knowledge of the facts of this case.

*Separate Trial Counsel*

Plaintiff next contends that the Court can remedy any potential advocate-witness problem by allowing his father to continue representing him in pre-trial proceedings and retaining separate counsel to represent him at trial.

It is true that there are instances where the balance between the client's right to choice of counsel and the Court's interest in ensuring uncompromised representation is best served by allowing an attorney-witness to represent the client in pre-trial matters, but not at trial. *See Solomon v. Siemens Indus., Inc.*, No. 11-CV-1321 (DLI) (SMG), 2013 WL 5728252, at *4 (E.D.N.Y. Oct. 22, 2013) (citing cases).[5] It is also true that our cases have referenced the confusion during trial that would result from an attorney's dual role as advocate and witness as one reason for disqualifying an attorney. *See Murray*, 583 F.3d at 178 (citing *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269, 282–83 (2d Cir. 2004) (noting various problems likely to arise at trial, including that "the lawyer might appear to vouch for his own credibility," opposing counsel would be placed in a "difficult position when she has to cross-examine her lawyer-adversary," and that "some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client").

Nonetheless, the awkwardness that would result at trial is not the only or even the central reason for disqualification under the advocate-witness rule. The fundamental justification for the

---

[5] In such cases, the result has typically turned on the lack of clarity as to whether the attorney's testimony would be truly necessary at the pre-trial stage. *See, e.g.*, *Stratavest Ltd. v. Rogers,* 903 F. Supp. 663, 668 (S.D.N.Y. 1995) (noting "it is too early at this point in the proceeding [during discovery] to determine [whether counsel's testimony may be necessary]"; *Norman Reitman Co. v. IRB-Brasil Resseguros S.A.*, No. 01-CV-265 (RCC), 2001 WL 1132015, at *3 (S.D.N.Y. Sept. 25, 2001) (collecting cases). These cases are inapposite because here it is clear from the Complaint on its face that Plaintiff's father is a necessary witness.

rule is to preserve the integrity of the judicial system and the adversary process by ensuring the objective, professional representation of parties before the court. *See Murray*, 583 F.3d at 178 ("[T]he ultimate reason for disqualification [is] harm to the integrity of the judicial system."); *Hempstead Video, Inc.*, 409 F.3d at 132 (the court's authority to disqualify attorneys arises from its need to "maintain the highest standards of the profession" among practitioners appearing before it). The fact that Mr. Rizzuto is serving as his son's attorney despite his intimate involvement in the events underlying this case permits an inference that Mr. Rizzuto will be unable to provide this objective representation.[6] *See Mut. Life Ins. Co. of New York v. Liberty Mut. Ins. Co.*, 746 F. Supp. 375, 377 (S.D.N.Y. 1990) ("Because [the attorney] should not have accepted employment in this matter in the first place, disqualification for all purposes is the appropriate remedy. [The attorney] urges . . . that she and her firm be permitted to continue as pre-trial counsel including the arguing of a motion for summary judgment . . . . However, [the New York advocate-witness rule] prohibits the attorney from acting as an 'advocate,' a role which plainly encompasses arguing pre-trial motions before the Court and plaintiff counsel's role to date."). In other cases where the attorney's involvement in the underlying facts was pervasive and his testimony will obviously be required, courts have consistently disqualified the attorney from serving either at trial or in the pre-trial stages of the case. *See id.*; *Gleason,* 941 F. Supp. at 35-36 (disqualifying plaintiff's counsel at the beginning of the case due to his "extensive personal involvement in every aspect of the underlying controversies that led to this lawsuit"); *Fulfree,* 945 F. Supp. at 772 ("There is no justification for

---

[6] Specific aspects of Mr. Rizzuto's litigation strategy before the Court further call into question his ability to provide representation meeting the highest standards of the profession. *See* Section III (Conflict of Interest), *infra*.

allowing [the attorney] to represent plaintiff during the pre-trial aspect of this litigation when it is clear that he may be a material witness at trial, and it is clear that he could be required to testify.").

The Court also notes the conflicting claims made by Plaintiff in arguing that his father's disqualification would result in substantial hardship and in arguing that any advocate-witness issue can be solved by limiting his father's representation to pre-trial matters. In the former argument, Plaintiff references his father's unparalleled knowledge of the facts underlying this case (which is evident from the Complaint) as a reason that no other attorney could substitute for him. Opp'n 24. In the latter argument, Plaintiff suggests that he can retain a separate attorney at the time of trial, and that this attorney can be brought up to speed on the nine years of consistent disputes that underlie this case. Opp'n 22. These inconsistent arguments highlight the importance of Mr. Rizzuto serving as a source of information through this litigation—during the pre-trial stage to educate a separate attorney on the facts underlying Plaintiff's claims, and during trial to provide testimony to establish them—rather than as an advocate. The Court is unpersuaded that Plaintiff will be able to receive uncompromised representation if his father acts only as his pre-trial counsel.

*Bench Trial*

In a similar vein, Plaintiff argues that the Court can cure the advocate-witness problem in this case by holding a bench trial instead of a jury trial. Opp'n 20-22. Although Plaintiff's complaint includes a jury demand, Plaintiff has indicated his willingness to waive his jury trial right to allow his father to remain his counsel. *Compare* Compl. 1 *with* Opp'n 20. Plaintiff suggests that when the judge, rather than a jury, serves as the finder of fact, attorney disqualification under the advocate-witness rule is inappropriate, because the judge is likely to be able to comprehend this dual role where the jury would be overwhelmed with confusion. Opp'n 21-22.

For largely the same reasons that obtaining separate pre-trial counsel would not remedy the advocate-witness issue, neither would conducting a bench trial. The purpose of disqualification under the rule is not merely logistical, but is to ensure that the attorney can provide representation that is uncompromised by his involvement in the underlying facts of the case, preserving his objectivity and the integrity of the adversary process. *First NBC Bank*, 259 F. Supp. 3d at 56. A bench trial would obviously not cure the issues with Plaintiff's father's pre-trial advocacy discussed above. Moreover, Plaintiff's proffer, by and through Mr. Rizzuto, of waiving his previously demanded right to a jury trial brings into focus the Court's concern that Plaintiff may take actions that are adverse to his own case under the advice of his father. *See* Section III (Conflict of Interest), *infra*.[7][8]

---

[7] In the section of his Opposition requesting a bench trial as an alternative to disqualification, Plaintiff quotes the following excerpt from a case in this District: "Disqualification under [Rule 3.7(a)] is triggered only when the attorney actually serves as an advocate before the jury." *Finkel*, 740 F. Supp. 2d at 373 (citing *Murray*, 583 F.3d at 179). Opp'n 21. We first note that this is not a precise restatement of the Second Circuit's guidance in *Murray*, which provides that "the concerns motivating Rule 3.7 are attenuated where [] the witness-'advocate' is not someone who will be trying the case to the jury." *Murray*, 583 F.3d at 179 (emphasis removed). Though the court's concerns may generally be *attenuated* in such cases, this does not mean that the district court can never disqualify an attorney from serving as pre-trial counsel under the advocate-witness rule, which our precedent makes clear is within the court's discretion.

More importantly, neither the reference to "the jury" in *Murray* nor in *Finkel* arises in the context of questioning whether a bench trial would overcome the concerns presented by the advocate-witness rule. Rather, the courts in both of these cases considered the disqualification of *entire law firms* by imputation under Rule 3.7(b). The standards for disqualification by imputation are much higher than for disqualification of an individual attorney, in large part because a law firm likely has many attorneys available to provide representation on a case, some of whom may serve as trial counsel and others of whom may not. *Murray*, 583. F.3d at 178-179. Plaintiff's citation is thus inapposite to the question of whether a bench trial could cure the problems inherent in his father's representation.

[8] Plaintiff also requests that the Court convene a fact finding hearing to determine whether he is truly a necessary witness in this action whose disqualification is appropriate. Opp'n 28. As discussed throughout the Court's opinion, the facts already elicited at this stage of the case make

### III.   Conflict of Interest

The Defendants argue that Mr. Rizzuto should also be disqualified from representing his son because of potential conflicting interests between the two. Mot. to Disqualify 8-11; Reply 4-8, ECF No. 53. The Court agrees that there are serious potential conflicts of interest between Plaintiff and his father that warrant Mr. Rizzuto's disqualification.

*Standard*

The district court's authority to disqualify attorneys based on conflicts of interest with their clients is rooted in its ability to manage its own affairs, and serves the ultimate purpose of preserving the integrity of the judicial system. *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Disqualification is appropriate "where an attorney's conflict of interest [] . . . undermines the court's confidence in the vigor of the attorney's representation of his client." *Id*.

A district court may disqualify an attorney based on a potential, rather than an actual, conflict of interest. *See Tucker v. Shaw*, 378 F.2d 304, 307 (2d Cir. 1967) ("[I]t [is] clearly within the discretion of the district judge to nip any potential conflict of interest in the bud."); *McDonald v. Hammons*, 936 F. Supp. 86, 87 (E.D.N.Y. 1996) ("While plaintiffs may be correct in arguing that there is 'absolutely no conflict' between the parents and their infant children, this is a case in which, on the current record, there is a potential conflict of interest."); *see also First NBC Bank*, 259 F. Supp. 3d at 56 ("[D]isqualification may be justified even in the absence of a clear ethical breach where necessary to preserve the integrity of the adversary process."). When a conflict

---

clear that Plaintiff's father is a necessary witness. The Court therefore denies Plaintiff's request for a fact finding hearing.

potentially exists, "any doubt is to be resolved in favor of disqualification." *Blue Planet Software, Inc.*, 331 F. Supp. 2d at 275.

### Discussion

Both because of the limitations on Mr. Rizzuto's representation caused by his status as a necessary witness in this action, and because of specific questionable conduct by Mr. Rizzuto so far in these proceedings, the Court finds that Mr. Rizzuto should be disqualified from representing his son on the additional ground of conflict of interest.

As discussed in Section II, *supra*, the problems with Mr. Rizzuto's continued representation of Plaintiff as the essential witness for his case are numerous, and they are appropriately described as both a violation of the advocate-witness rule and a conflict of interest. Cases in our Circuit and the New York Rules of Professional Conduct have recognized that the issues inherent in serving as an advocate and a witness simultaneously may also signal a conflict of interest between the attorney and his client. *See Ardemasov v. Citibank, N.A.*, 14 F. Supp. 3d 39, 48 (D. Conn. 2014) *("An advocate who also ought to be called as a witness hurts his client because the advocate's ability to objectively assess his client's case may become clouded.")* (internal quotation marks and citation omitted); *Gleason*, 941 F. Supp. at 35 (lawyer's status as a necessary witness presented a "real and present danger that his personal interests will infringe on his professional representation in ways deleterious to his client"); *see also* N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.7(a), cmt. 1 ("Combining the roles of advocate and witness . . . can create a conflict of interest between the lawyer and the client."). The conflict that the Court has an interest in preventing in such a situation is somewhat distinct from scenarios in which an attorney seeks to represent multiple clients with differing material interests—*see, e.g.*, *Hollenbeck v. Boivert*, 330 F. Supp. 2d 324 (S.D.N.Y. 2004)—or possesses confidential information that may

- 19 -

be used against a party—*see, e.g.*, *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010). Nonetheless, the advocate-witness scenario may create what is accurately described as a conflict in so far as it presents a significant risk that "a lawyer's exercise of professional judgment in considering, recommending or carrying out an appropriate course of action for the client will be adversely affected." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 1.7, cmt. 8.

Plaintiff's father's conduct as counsel in this litigation so far has already created serious concerns about his ability to exercise professional judgment and advise his client on appropriate courses of action. As discussed above, Plaintiff's father originally, at a pre-trial hearing before the Court, indicated that he would not testify on his son's behalf in order to allow him to continue to serve as counsel in this case. ECF No. 31. To this point, the Court agrees with Defendants' contentions in their Motion to Disqualify:

> It is indicative of the severe nature of the conflict that Mr. Rizzuto has implied in pre-motion discussions with this Court that he will not testify as a witness for the plaintiff despite being one of two witnesses with firsthand knowledge of the facts necessary for Matthew to make out a prima facie case that his removal and foster care placement were violative of his clearly established constitutional rights. One would expect that such an important fact witness would indeed testify *to avoid the prejudice to his son that would result without such testimony* . . . .

Mot. to Disqualify 11-12 (emphasis in original); *see also Gleason*, 941 F. Supp. at 36 ("Mr. Mathison's statement that he and his client have agreed not to call him to the stand merely serves, once again, to highlight the conflict.").

In Plaintiff's Opposition, he abandons his father's ill-advised suggestion that he will not serve as a witness in this case (although he still disputes that his father is a necessary witness). Instead, as discussed, Plaintiff offers to give up his right to a jury trial or to retain separate trial counsel to allow his father to continue to serve as his attorney. Opp'n 18-22. These are both

significant concessions, which Plaintiff's father has apparently recommended to Plaintiff to allow

him to continue serving as his attorney. As noted, the waiver of Plaintiff's right to a jury trial is

significant because he previously included a jury demand in his complaint, and his suggestion that

his father serve as pre-trial counsel with a separate attorney representing him at trial would likely

present a major hurdle to the complete presentation of facts supporting his claims. In the context

of Plaintiff's father's earlier representations to the Court that he would not testify, his approach to

Plaintiff's rights and interests for the only apparent purpose of allowing him to remain Plaintiff's

counsel at least indicates the potential for a conflict between them.

Another indication that Mr. Rizzuto's representation is potentially adverse to Plaintiff's

interests can be found in the unsworn declaration signed by Plaintiff and submitted to the Court as

an exhibit to Plaintiff's Opposition. This declaration reads, in relevant part:

> 3.     The underlying Family Court abuse petition was filed in 2001 when I was
> three (3) years old with proceedings including three (3) separate fact finding
> hearings continuing through 2010.
> 4.     I have neither independent recollection of the events that brought upon the
> action nor any knowledge of any events or proceedings in the Family Court which
> commenced nearly seventeen (17) years ago.
> 5.     I am not an attorney and have no independent knowledge of any witnesses
> or the evidence adduced at the hearings . . . .
>
> **7.     Based upon their past actions of deceiving the Family Court and the
> Appellate Division I do not trust the defendants to be forthcoming in
> complying with anticipated discovery orders** and remain skeptical I can get a fair
> hearing with an attorney not familiar with the entirety of the underlying Family
> Court proceedings nevertheless obtain any meaningful discovery [*sic*]. . . .
>
> 12. . . .  **Based upon the ongoing deceptive, if not criminal, acts of the
> defendants, I believe my fears are completely justified**. . . .

Matthew Decl. ¶¶ 3-5, 7, 12 (emphasis added).

Plaintiff's declaration highlights the relatively unique nature of the potential conflict in this

case: not only is Plaintiff relying on his father as a principal witness, but as a principal (perhaps

exclusive) source of information about the claims. It is disquieting that Plaintiff, in the same declaration, explains his total lack of firsthand knowledge of the Family Court proceedings associated with his foster care placement, but goes on to make the heady charge that the Defendants deceived (perhaps criminally) the New York State Courts throughout these same proceedings. It is difficult for the Court to believe that these internally contradictory statements are the result of anything other than his father's drafting. This does not abrogate the obligation of Plaintiff, who is an adult, to make true and factually supported statements to the Court, but it does call into question Plaintiff's father's professional judgment in writing and/or allowing this statement to be submitted.

Courts in this Circuit have previously addressed the possibility of false testimony made by children in matters related to Family Court proceedings when an attorney jointly represents both the children and the children's parents. *See McDonald*, 936 F. Supp. at 87 ("As a practical matter, this conflict might lead the parents to attempt to influence their children to testify falsely at their respective depositions."). On several occasions, courts have acknowledged this concern but have declined to disqualify the challenged attorney based on the possibility of the children's false testimony. *See, e.g.*, *Hollenbeck*, 330 F. Supp. 2d at 335-36; *Mercedes*, 2001 WL 527477, at *4–7; *Phelan v. Torres*, No. 04-CV-3538 (ERK), 2010 WL 1292283, at *2 (E.D.N.Y. Apr. 2, 2010). An important distinction between these cases and the instant case, however, is that here the challenged lawyer is not an outside attorney who is representing parents and their children, but *is* the parent of Plaintiff, who is now an adult but was a child during the challenged events. The ability of the Court to ensure appropriate attorney conduct is arguably mitigated where there is no outside, unrelated counsel with the level of professional distance necessary to objectively evaluate whether a proposed course of legal action is advisable.

That professional distance appears lacking in view of the charged allegations in Plaintiff's declaration regarding the Defendants' past conduct, about which Plaintiff himself obviously—and on his declaration's own terms—has no personal knowledge. The Court is not willing to overlook these allegations as mere bluster in light of the other concerns about Mr. Rizzuto's representation discussed herein. Plaintiff's reliance on his father for both legal advice and knowledge of the facts of his case only compounds the potential for conflict in this regard.

## CONCLUSION

For the reasons discussed herein, the Court GRANTS Defendants' Motion to Disqualify Mr. Rizzuto from serving as Plaintiff's counsel at any stage of these proceedings. As Plaintiff has requested, Opp'n 28, the Court will allow Plaintiff sixty (60) days to substitute Mr. Rizzuto as his counsel.

**SO ORDERED.**

_____/s/_____

Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
     March 29, 2019

- 23 -